UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | DOCKET NO. 5:22-cr-277 |
| VERSUS | CHIEF JUDGE HICKS |
| TYDARRIEN T. PORTER | MAGISTRATE JUDGE HORNSBY |

**DEFENDANT'S MOTION TO DISMISS COUNT 3 OF THE INDICTMENT AND INCORPORATED MEMORANDUM IN SUPPORT**

NOW INTO COURT comes the defendant, TYDARRIEN T. PORTER, through undersigned counsel, who respectfully moves to dismiss Count 3 of the Indictment under Fed. R. Crim. Proc. 12(b)(1) and 12(b)(3)(B)(v), for the reasons show more fully below:

**I. Grounds Supporting the Motion.**

**A. Count 3 of the Indictment issued by the Grand Jury charges Porter with unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g)(9).**

Count 3 of the Indictment alleges that:

> On or about September 14, 2022, in the Western District of Louisiana, the defendant, Tydarrien T. Thomas, knowing he had been convicted of a misdemeanor crime of domestic abuse battery, knowingly possessed a firearm to wit: a Glock pistol, model: 20 Gen 4; Caliber: .45 auto; and the firearm and affecting commerce in violation of Title 18, United States Code, Section 922(g)(9) (emphasis added).

**B. Title 18, U.S.C. § 922(g)(3) is an unconstitutional restriction on a person's Second Amendment right to bear arms.**

The pertinent statute in Title 18 provides, as follows:

**(g)** It shall be unlawful for any person—

1

* * *

>**(9)** who has been convicted in any court of a ***misdemeanor crime of domestic violence,*** to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce (emphasis added).

In 2008, the U.S. Supreme Court adopted an individual-rights theory of the Second Amendment based on its text and the role in our country's early history. *District of Columbia v. Heller*, 554 U.S. 570, 605 (2008). In striking down a ban on handguns in the home, the Court held that the right to keep and bear arms for defense of self and home struck at the core of the Second Amendment. *Id.* at 629-30. The Court reiterated this view two years later in *McDonald v. City of Chicago*, emphasizing that a person's right to bear arms for self-defense is a "fundamental right[] necessary to our system of ordered liberty." 561 U.S. 742, 778 (2010).

The Supreme Court recently provided further guidance regarding laws that impinge on an individual's Second Amendment right to bear arms. *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022). In *Bruen*, the Court found that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* The government "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126, citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961).

The imposition of a complete ban on persons convicted of a misdemeanor crime of violence effectively disarms them for life. It also imposes a penalty of up to 15 years of

imprisonment for possession of a firearm by such individuals. *See* 18 U.S.C. § 924(a)(2). There is no exception in § 922(g)(9) for home-defense or self-defense. *See* § 922(g)(9). Thus, the domestic violence misdemeanor offender is totally deprived of his right to bear arms "at its zenith." *See Gould v. Morgan*, 907 F.3d 659, 672 (1st Cir. 2018) ("[T]he right to self-defense … is at its zenith inside the home.").

The .45 caliber handgun which Porter possessed, as well as similar versions, are in general use throughout the country. They can be purchased in a wide variety of retail outlets in the county, at gun shows, and even from other individuals. Because of its relative compactness and firepower, the .45 caliber pistol is commonly used for purposes of self-defense inside homes. The Second Amendment presumptively protects such conduct. As such, the restriction imposed by Section 922(g)(9) clearly impinges on the core right to possess firearms guaranteed under the Second Amendment. Accordingly, the Government "must justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* (internal quotation marks omitted). See also, <u>United States v. Rahimi</u>, 2023 WL 1459240, at *5 (5th Cir. Feb. 2, 2023)(holding that § 922(g)(8)'s prohibition on persons subject to domestic abuse protection orders is unconstitutional under the Second Amendment).

Section 922(g)(9)'s prohibition on misdemeanor offenders does not have lengthy historical pedigree. In fact, the prohibition was not even a part of federal law until 1996 when Congress extended the prohibition to include persons convicted of "a misdemeanor crime of domestic violence." See, *United States v. Hayes*, 555 U.S. 415, 418, 129 S. Ct. 1079, 1082 (2009). Furthermore, the historical record contradicts any notion that offenders convicted of domestic violence misdemeanors would not have been considered "law-abiding, responsible"

3

citizens such that they would be deprived of their right to bear arms. Authored by Justice Scalia, *Heller*'s majority opinion is couched in the Second Amendment's early history. In that history, there is no indication that domestic violence misdemeanor offenders comprised members of a class subject to "longstanding prohibitions" on otherwise-lawful firearms and ammunition ownership. While there is little or no historical record of how the Framers understood the terms "law-abiding" and "responsible" vis-a-vis the Second Amendment, we know this class of offenders was not historically excluded from possessing firearms. As David Kopel and Joseph Greenlee explain:

> It is true that the Framers and the public at large wanted gun owners to be virtuous and peaceable (except when fighting was necessary). This is one reason for the preference for militias over standing armies; because the professional soldier was entirely dependent on the government, and lived a life of constant obedience to others, it was believed that moral degradation would result. It is equally true that the Framers and the American people wanted virtuous people as voters, jurors, elected officials, and so on. <u>But there is simply no</u> <u>tradition - from 1791 or 1866 - of prohibiting gun possession (or</u> <u>voting, jury service, or government service) for people convicted of</u> <u>misdemeanors or subject to civil protective orders</u>. The colonies and then the states certainly knew how to ban firearms possession for people who were considered dangerous (namely, slaves and Indians). This "tradition" cannot be extended to every person whom a modern legislature might consider dangerous. A modern ban might be upheld under heightened scrutiny, but there is no tradition that persons subject to novel modern bans have been historically considered to have no Second Amendment rights at all.
>
> David B. Kopel & Joseph G. S. Greenlee, *The Federal Circuits' Second Amendment Doctrines*, 61 St. Louis L.J. 193, 244 (Winter 2017) (emphasis added).

And although domestic violence was a crime in Puritan New England, just as today, "[h]istorical support for the exclusion of domestic violence offenders from Second Amendment protection appears rather thin … Judges in this time period were more likely to confiscate a wife

beater's liquor than his guns." Carolyn B. Ramsey, *Firearms in the Family*, 78 Ohio St. L.J. 1257, 1301 (2017).

## II.  Conclusion

Title 18, U.S.C. §922(g)(9) is facially unconstitutional because it intrudes upon fundamental rights protected by the Second Amendment. The Government cannot prove that its prohibition against offenders with misdemeanor crimes of domestic violence is supported by the Amendment's historical tradition. See *District of Columbia v. Heller*, 554 U.S. 570 (2008); *New York State Rifle & Pistol Association, Inc. v. Bruen*, 2022 WL 2251305 (2022); 2023 WL 1459240, (5th Cir. Feb. 2, 2023). Accordingly, Count 3 of the Indictment fails to state an offense.

WHEREFORE, defendant, TYDARRIEN T. PORTER, respectfully prays that this Honorable Court dismiss Count 3 of the Indictment.

Respectfully submitted,

REBECCA L. HUDSMITH
Federal Public Defender for the Western and Middle Districts of Louisiana

*s/  Betty L. Marak*

Betty L. Marak, LSBA No. 18640
Assistant Federal Public Defender
300 Fannin Street, Suite 2199
Shreveport, Louisiana 711101
(318) 676-3310   Fax (318) 676-3313
E-mail: betty_marak@fd.org