**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 22-00277 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| TYDARRIEN T. PORTER | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss Count Three of the Indictment (Record Document 21) filed by Defendant, Tydarrien T. Porter ("Porter"). The United States of America ("the Government") filed an opposition (Record Document 24), and Porter filed a reply (Record Document 25). For the following reasons, Porter's Motion to Dismiss is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 29, 2022, Porter was indicted by a grand jury on three counts. See Record Document 1. The count at issue in the pending motion is Count Three, which reads:

> On or about September 14, 2022, in the Western District of Louisiana, the defendant, Tydarrien T. Thomas, knowing he had been convicted of a misdemeanor crime of domestic abuse battery, knowingly possessed a firearm to wit: a Glock pistol, model: 20 Gen 4; Caliber: .45 auto; and the firearm and affecting commerce in violation of Title 18, United States Code, Section 922(g)(9).

Id. Thus, Porter is charged with, among other things, possessing a firearm in violation of 18 U.S.C. § 922(g)(9). See id.

1

In his Motion to Dismiss Count Three of the Indictment, Porter challenges the validity of Section 922(g)(9) as "an unconstitutional restriction on a person's Second Amendment right to bear arms." See Record Document 21 at 1. Section 922(g)(9) states:

> (g) It shall be unlawful for any person—
>
> (9) who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(9). Porter argues that, under recent Supreme Court precedent in District of Columbia v. Heller, 554 U.S. 570 (2008), and New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111 (2022), Section 922(g)(9) should be struck down as unconstitutional. See Record Document 21 at 2.

In response, the Government argues that "Section 922(g)(9)'s prohibition on gun possession by persons convicted of domestic abuse battery is constitutional." Record Document 24 at 2. Following the analytical framework as laid out in Bruen, *supra*, the Government argues that Porter's claim fails because he is not facially protected by the Second Amendment. See id. at 3. Even if Porter was facially protected, the Government asserts that "prohibiting persons convicted of misdemeanor domestic abuse battery from possessing firearms is consistent with this nation's historical tradition of firearm regulation." See id. at 7.

In his reply, Porter argues that the Government has failed to meet its burden of "demonstrating a robust tradition of 'distinctly similar' historical regulations" that would justify Section 922(g)(9)'s restriction on Porter's Second Amendment rights. See Record Document 25 at 2 (quoting Bruen, 142 S. Ct. at 2131).

**LAW AND ANALYSIS**

    I.    **Law**

The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. However, it is well-established that, ""[l]ike most rights, the right secured by the Second Amendment is not unlimited." Heller, 554 U.S. at 626. Thus, under the Supreme Court's most recent guidance in Bruen, courts must engage in a two-step inquiry to determine whether a regulation placing restrictions on a party's Second Amendment rights is constitutional. Bruen, 142 S. Ct. at 2129–30. First, a court must ask whether "the Second Amendment's plain text covers an individual's conduct." Id. If the Second Amendment does cover the individual's conduct, the court then must ask whether "the regulation is consistent with this Nation's historical tradition of firearm regulation." Id. Only where the regulation is "consistent with the Second Amendment's text and historical understanding" can it pass constitutional muster. See id. at 2131.

    II.    **Analysis**

Under the first step of the Heller/Bruen inquiry, the Government argues that Porter is not facially protected by the plain text of the Second Amendment, and therefore, Section 922(g)(9) does not unconstitutionally restrict Porter's Second Amendment rights. See Record Document 24 at 3. According to the Government, "the right described by the Second Amendment only extends to 'the people'—i.e., 'law-abiding, responsible' citizens keeping or bearing arms for 'lawful purposes.'" See id. (citing Heller, 554 U.S. at 635; Bruen, 142 S. Ct. at 2118).

3

In response, Porter argues that his conduct is facially protected by the Second Amendment because he possessed a .45 caliber handgun that is "in general use throughout the country." See Record Document 21 at 3. Thus, Porter asserts that Section 922(g)(9) "clearly impinges on the core right to possess firearms guaranteed under the Second Amendment," and the burden thus shifts to the Government to prove otherwise. See id.

In both Heller and Bruen, the Supreme Court included the qualifier "law-abiding" when discussing those people who are facially protected by the Second Amendment. See Heller, 554 U.S. at 635 (holding the Second Amendment confers the "right of **law-abiding**, responsible citizens to use arms in defense of hearth and home") (emphasis added); Bruen, 142 S. Ct. at 2134 (emphasizing that the petitioners were "two ordinary, **law-abiding**, adult citizens" protected as "people" under the Second Amendment) (emphasis added). The Heller Court apparently used this limitation to ensure that its holding would not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." Heller, 554 U.S. at 626–27. Thus, this Court is of the opinion that Porter, as someone who was convicted of domestic abuse battery and thus who is not "law-abiding," is not facially protected by the Second Amendment.

On the other hand, this Court acknowledges that "there is some debate over the extent to which the Court's 'law-abiding' qualifier constricts the Second Amendment's reach." United States v. Rahimi, No. 21-11001, 2023 WL 2317796, at *4 (5th Cir. Mar. 2, 2023). Thus, this Court will analyze Porter's motion under the second step of the

Heller/Bruen analysis as well. Under step two, the Government argues that even if the Second Amendment were to facially protect Porter, prohibiting people like Porter from possessing firearms comports with "this nation's historical tradition of firearm regulation." See Record Document 24 at 7. This Court agrees and finds that the Government has met its burden of demonstrating that Section 922(g)(9) has analogues in our nation's history that justify the restriction on the Second Amendment right to bear arms here. See id. at 8–10.

Under the second step of the Heller/Bruen analysis, "the Government must point to 'historical precedent from before, during, and even after the founding [that] evinces a comparable tradition of regulation.'" Rahimi, 2023 WL 2317796, at *6 (quoting Bruen, 142 S. Ct. at 2131–32). "The Government need not identify a 'historical *twin*'; rather, a 'well-established and representative historical *analogue*' suffices." Id. (quoting Bruen, 142 S. Ct. at 2133). "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." Bruen, 142 S. Ct. at 2133.

The Fifth Circuit's recent opinion in Rahimi, *supra*, is instructive. There, petitioner Rahimi challenged Section 922(g)(8), the code section immediately preceding the one Porter challenges here. See Rahimi, 2023 WL 2317796, at *3. Section 922(g)(8) prohibits an individual under a domestic violence restraining order from possessing a firearm. 18 U.S.C. § 922(g)(8). Rahimi argued successfully on appeal—after the Supreme Court decided Bruen—that Section 922(g)(8) was unconstitutional as an impingement on his Second Amendment right to bear arms. See Rahimi, 2023 WL 2317796, at *12. The court

found that there were no sufficiently similar historical analogues that would justify the restriction placed on Rahimi's Second Amendment rights. See id.

However, while the Fifth Circuit's opinion in Rahimi is persuasive, it is distinguishable here, primarily because the differences between Rahimi and Porter—and the laws criminalizing their conduct—are vast. First, the Fifth Circuit took issue with the fact that Rahimi "was not a convicted felon or otherwise subject to another longstanding prohibition[ ] on the possession of firearms' that would have excluded him" from the protections of the Second Amendment. See id. at *5. In contrast, Porter "has been adjudicated a violent criminal." See Record Document 24 at 5. Thus, even on the first step of the Heller/Bruen analysis, there are notable distinctions between the two petitioners—one could be labelled "law-abiding," and one likely cannot.

Further, the Fifth Circuit heavily emphasized that Rahimi had not been criminally convicted nor was he accused of any offense. See Rahimi, 2023 WL 2317796, at *7. Additionally, the domestic abuse proceeding that served as the basis for Section 922(g)(8)'s application was purely civil. See id. Thus, in Rahimi, the Fifth Circuit was able to distinguish historical "going armed" laws from Section 922(g)(8) because those laws "only disarmed an offender after criminal proceedings and a conviction," while Section 922(g)(8) did not have such procedural protections. See id. at *10. In contrast, Section 922(g)(9) relies on a qualifying conviction to "disarm[] a broadly dangerous class—domestic-violence misdemeanants," of which Porter is one. See Record Document 24 at 7. Thus, the "going armed" distinction from Rahimi is inapplicable here, where Section 922(g)(9) specifically contemplates people like Porter who were subject to criminal proceedings and a conviction. Thus, the numerous historical "going armed" laws, in states

6

such as North Carolina, Massachusetts, and Virginia, can serve as historical analogues to Section 922(g)(9) under the Heller/Bruen analysis, even though they were unpersuasive in Rahimi.

In its opposition to Porter's motion, the Government also stresses that historically, "[v]iolent criminals were not part of the virtuous citizenry," and laws often "precluded gun ownership by other groups they deemed 'untrustworthy.'" Record Document 24 at 8 (citing Richardson v. Ramirez, 418 U.S. 24, 54, 56 (1974) (holding that criminals fell outside the scope of the Fourteenth Amendment's protections of voting rights)). The Government cites various sources demonstrating the Framers' intent to disarm those deemed to be dangerous or untrustworthy. See id.; see also Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 700 F.3d 185, 200 (5th Cir. 2012) (identifying classes of individuals perceived to be dangerous during colonial times); Bruen, 142 S. Ct. at 1245 (recognizing the historical tradition of colonial-era prohibitions on "bearing arms in a way that spreads 'fear' or 'terror' among the people"). Additionally, the Government notes that Section 922(g)(9) actually provides greater safeguards—as compared to historical laws—for those deemed dangerous, by requiring due process in the criminal arena before an individual's right to bear arms can be restricted, and allowing for those criminal convictions to be expunged or pardoned. See Record Document 24 at 9 (citing 18 U.S.C. §§ 921(a)(33)(B)(i) and 921(a)(33)(B)(ii)).

Finally, the Government argues that both modern and historic regulations share similar justifications here: namely, both sets of regulations "were justified by a legislative determination of the dangerousness of a defined class." See id. (citing Kanter v. Barr, 919 F.3d 437, 457–58 (7th Cir. 2019)). Such justifications are grounded in social and scientific

studies, evincing the positive effect of preventing domestic abusers from possessing firearms. See id.; see also United States v. Belless, 338 F.3d 1063, 1067 (9th Cir. 2003), abrogated on other grounds by United States v. Castleman, 572 U.S. 157 (2014) ("The purpose of the statute is to keep firearms out of the hands of people whose past violence in domestic relationships makes them untrustworthy custodians of deadly force."); 142 Cong. Rec. 22985, 22986 (1996) (statement of Sen. Lautenberg) (describing firearm possession by domestic batterers is "dangerous"), (statement of Sen. Wellstone) ("[A]ll too often, the only difference between a battered woman and a dead woman is the presence of a gun."). Although Porter argues that comparing public policy goals is foreclosed by the Bruen decision, the Court finds that the Government engaged in more than a simple comparison of policy. See Record Document 25 at 2. Thus, the Court finds that the Government has met its burden of demonstrating that Section 922(g)(9) is "consistent with this Nation's historical tradition of firearm regulation." See Bruen, 142 S. Ct. at 2126, 2132. Thus, Section 922(g)(9) is a constitutional limitation on Porter's Second Amendment right to bear arms.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Dismiss Count Three of the Indictment (Record Document 21) is **DENIED**.

An order consistent with the terms of this ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this the 14th day of March, 2023.

S. MAURICE HICKS, JR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT